**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------------x
                                                            :
DUNKIN' DONUTS FRANCHISED                                    :
  RESTAURANTS LLC,                                           :
  a Delaware Limited Liability Company,                      :
DD IP HOLDER LLC,                                            :
  a Delaware Limited Liability Company,                      :
BASKIN-ROBBINS FRANCHISED SHOPS LLC, :
  a Delaware Limited Liability Company,                      :
BR IP HOLDER LLC,                                            :
  a Delaware Limited Liability Company,                      :
                                                            :
                    Plaintiffs,                             :
                                                            :
          v.                                                :     C.A. No. 07-CV-3612 (LMM)
                                                      :
KNZ 110th LEXINGTON, LLC,                                    :
  a New York Limited Liability Company,                     :
KNZ 161 BROADWAY DONUT, LLC,                                 :
  a New York Limited Liability Company,                     :
KNZ 149 BROADWAY DONUT, LLC,                                 :
  a New York Limited Liability Company,                     :
                                                            :
                    Defendants.                             :
------------------------------------------------------------x

## COMPLAINT

### Parties

1.      Plaintiff Dunkin' Donuts Franchised Restaurants LLC, successor-in-interest to

Dunkin' Donuts Incorporated, is a Delaware limited liability company with its principal place of

business at 130 Royall Street, Canton, Massachusetts 02021.  It is engaged in the business of

franchising independent business persons to operate Dunkin' Donuts shops throughout the

United States.  Dunkin' Donuts franchisees are licensed to use the trade names, service marks,

and trademarks of Dunkin' Donuts and to operate under the Dunkin' Donuts System, which

involves the production, merchandising, and sale of doughnuts and related products utilizing a

specially designed building with special equipment, equipment layouts, interior and exterior accessories, identification schemes, products, management programs, standards, specifications, proprietary marks, and information.

2.      Plaintiff DD IP Holder LLC, Dunkin's wholly owned subsidiary and successor-in-interest to Dunkin' Donuts USA, Inc., is a Delaware limited liability company with its principal place of business at 130 Royall Street, Canton, Massachusetts.  DD IP Holder LLC is the owner of the trademark, service mark, and trade name "Dunkin' Donuts," and related marks. Unless otherwise specified, Dunkin' Donuts Franchised Restaurants LLC and DD IP Holder LLC are collectively referred to hereinafter as "Dunkin'" or "Dunkin' Donuts."

3.      Baskin-Robbins Franchised Shops LLC ("Baskin-Robbins"), successor-in-interest to Baskin-Robbins USA, Co .  Plaintiff Baskin-Robbins is a Delaware limited liability company with its principal place of business at 130 Royall Street, Canton, Massachusetts 02021.  Baskin-Robbins is engaged in the business of franchising independent business persons to operate Baskin-Robbins stores throughout the United States.  Baskin-Robbins franchisees are licensed to use the trade names, service marks, and trademarks of Baskin-Robbins and to operate under the Baskin-Robbins System, which involves the production, merchandising, and sale of ice cream and related products utilizing special equipment, equipment layouts, interior and exterior accessories, identification schemes, products, management programs, standards, specifications, proprietary marks, and information.

4.      Plaintiff BR IP Holder LLC, successor-in-interest to Baskin-Robbins Incorporated, is a Delaware limited liability company with its principal place of business at 130 Royall Street, Canton, Massachusetts.  BR IP Holder LLC is the owner of the trademark, service mark, and trade name "Baskin-Robbins," and related marks.  Baskin-Robbins has the exclusive

2

license to use these marks and trade names and has used them continuously since approximately 1947 to identify its ice cream stores, and the ice cream and other products associated with those stores.  Unless otherwise specified, Baskin-Robbins Franchised Shops LLC and BR IP Holder LLC are collectively referred hereinafter as "Baskin-Robbins."

5.      Defendant KNZ 110th Lexington, LLC is a New York limited liability company with its principal place of business at 1773 Lexington Avenue, New York, New York 10029.  At all times relevant to this action, KNZ 110th Lexington, LLC has been the owner and operator of a retail doughnut shop located at 1773 Lexington Avenue, New York, New York 10029 ("Lexington Avenue Shop").  Defendant is a Dunkin' Donuts franchisee for the Lexington Avenue Shop pursuant to a Franchise Agreement dated May 29, 2003 (the "Lexington Avenue Agreement").  Defendant is licensed to use the Dunkin' Donuts trademarks, trade name and trade dress.

6.      Defendant KNZ 161 Broadway Donut, LLC is a New York limited liability company with its principal place of business at 3851 Broadway, New York, New York 10032.  At all times relevant to this action, KNZ 161Broadway Donut, LLC has been the owner and operator of a retail doughnut shop and ice cream store located at 3851 Broadway, New York, New York 10032 ("3851 Broadway Shop").  Defendant is a Dunkin' Donuts and Baskin-Robbins franchisee for Defendants' Shop pursuant to a Franchise Agreement dated November 23, 2004 (the "3851 Broadway Agreement").  Defendant is licensed to use the Dunkin' Donuts and Baskin-Robbins trademarks, trade name and trade dress.

7.      Defendant KNZ 149 Broadway Donut, LLC is a New York limited liability company with its principal place of business at 3600 Broadway, New York, New York 10031.  At all times relevant to this action, KNZ 149 Broadway Donut, LLC has been the owner and

operator of a retail doughnut shop and ice cream store located at 3600 Broadway, New York, New York 10031 ("3600 Broadway Shop").  Defendant is a Dunkin' Donuts and Baskin-Robbins franchisee for Defendants' Shop pursuant to a Franchise Agreement dated April 6, 2005 (the "3600 Broadway Agreement").  Defendant is licensed to use the Dunkin' Donuts and Baskin-Robbins trademarks, trade name and trade dress.

## Jurisdiction and Venue

8.      This Court has jurisdiction pursuant to §§ 34(a) and 39 of the Lanham Act, 15 U.S.C. §§ 1116(a) & 1121; and 28 U.S.C. §§ 1331, 1332(a), 1338, & 1367(a).  The amount in controversy exceeds $75,000, exclusive of interest and costs.

9.      Venue is proper in this district pursuant to 28 U.S.C. § 1391(b).

## Background Facts – Dunkin' Donuts

10.     Dunkin' is the franchisor of the Dunkin' Donuts franchise system.

11.     DD IP Holder LLC is the owner of the trademark, service mark, and trade name "Dunkin' Donuts," and related marks.  Dunkin' Donuts has the exclusive license to use and license others to use these marks and trade name and has used them continuously since approximately 1960 to identify its doughnut shops, and the doughnuts, pastries, coffee, and other products associated with those shops.

12.     DD IP Holder LLC owns numerous federal registrations for the mark Dunkin' Donuts, and related marks.  Among those registrations are Registration Nos. 748,901, 1,148,165, and 1,159,354.  Each of these registrations is in full force and effect, and is incontestable, pursuant to 15 U.S.C. § 1065.

13.     The Dunkin' Donuts trademarks and trade name are distinctive and famous and have acquired secondary meaning.

4

14.     The Dunkin' Donuts trademarks and trade name are utilized in interstate
commerce.

15.     The Dunkin' Donuts marks have been very widely advertised and promoted by
Dunkin' Donuts over the years.  Dunkin' Donuts and its franchisees have expended
approximately $875,000,000 in advertising and promoting the Dunkin' Donuts marks over the
last twenty-nine years.  Dunkin' Donuts spent approximately $94,000,000 in fiscal year 2000
alone on advertising and promotion.

16.     Dunkin' Donuts and its franchisees currently operate approximately 4,100 shops
in the United States and 1,800 shops outside of the United States.  Dunkin' Donuts shops feature
Dunkin' Donuts' distinctive trade dress, including the pink and orange color scheme, and the
frankfurter lettering style.  In the more than forty years since the Dunkin' Donuts system began,
millions of consumers have been served in Dunkin' Donuts shops.

17.     As a result of the extensive sales, advertising, and promotion of items identified
by the Dunkin' Donuts marks, the public has come to know and recognize the Dunkin' Donuts
marks, and to associate them exclusively with products and services offered by Dunkin' Donuts
and its franchisees.  The Dunkin' Donuts marks are among the best and most widely known
trademarks in the United States today, and are assets of inestimable value to Dunkin' Donuts,
representing and embodying Dunkin' Donuts' considerable goodwill and favorable reputation.

18.     Maintenance of the highest standards of health, sanitation, and safety is essential
to the development and maintenance of the reputation and goodwill of Dunkin' Donuts.  These
standards are important to Dunkin' Donuts and to each franchisee.

19.     The goodwill and reputation associated with the Dunkin' Donuts marks are
impaired when a franchisee fails to maintain standards and operates an unsanitary or unsafe

5

business under the Dunkin' Donuts trademarks.

## Background Facts – Baskin-Robbins

20.     Baskin-Robbins is the franchisor of the Baskin-Robbins System.

21.     BR IP Holder LLC is the owner of the trademark, service mark, and trade name "Baskin-Robbins" and related marks. Baskin-Robbins Incorporated has the exclusive license to use and license others to use these marks and trade names and has used them continuously since approximately 1947 to identify its ice cream stores, and the ice cream and other products associated with those stores.

22.     BR IP Holder LLC owns numerous federal registrations for the mark "Baskin-Robbins" or derivations thereof, as well as related marks. Each of these registrations is in full force and effect, and most of them are incontestable pursuant to 15 U.S.C. § 1065.

23.     The Baskin-Robbins trademarks are utilized in interstate commerce.

24.     The Baskin-Robbins marks have been very widely advertised and promoted by Baskin-Robbins over the years. As a result, the Baskin-Robbins marks have become famous throughout the United States.

25.     Baskin-Robbins and its franchisees currently operate approximately 2,200 stores in the United States and 2,600 stores outside of the United States. In the more than fifty years since the Baskin-Robbins System began, millions of consumers have been served in Baskin-Robbins stores.

26.     As a result of the extensive sales, advertising, and promotion of items identified by the Baskin-Robbins marks, the public has come to know and recognize the Baskin-Robbins marks, and to associate them exclusively with products and services offered by Baskin-Robbins and its franchisees. The Baskin-Robbins marks are among the best and most widely known

trademarks in the United States today, and are assets of inestimable value to Baskin-Robbins, representing and embodying Baskin-Robbins' considerable goodwill and favorable reputation.

27.    The goodwill and reputation associated with the Baskin-Robbins marks are impaired when a franchisee fails to maintain standards and operates an unsanitary or unsafe business under the Baskin-Robbins trademarks.

## Defendants' Use of Dunkin's Marks

28.    Defendants are licensed to use the Dunkin' Donuts trade name and trademarks in accordance with the terms of the Franchise Agreements.

29.    Dunkin' provides each of its franchisees a set of manuals and guidelines (collectively referred to hereinafter as the "Dunkin' Manuals") which set forth in detail the procedures, methodology and standards applicable to the operation of a Dunkin' Donuts shop. These documents include:

a.    The Network Administration Manual, which includes detailed sections on Operations Assessment for Customer Satisfaction (Chapter 5), Building and Site Maintenance (Chapter 11), Sanitation (Chapter 13), and Standards (Chapter 14);

b.    The Production and Distribution Manual, which includes detailed sections on Cleaning, Sanitizing and Maintaining Production Area Equipment (Chapter 1) and the production and handling of food products;

c.    The Customer Service Manual, which includes detailed sections on Receiving and Storing Raw Materials (Chapter 1), Service Procedures (Chapter 3), Procedure for Brewing and Serving Coffee (Chapter 4), Heating and Serving Bakery Products (Chapter 6), Making and Serving Sandwiches (Chapter 7), Procedures for Preparing and Serving Soup (Chapter 8), and Cleaning, Sanitizing and Maintaining Sales Area Equipment (Chapter 9); and

d.    The Retail Food Safety System Manual.

30.    Taken together, the Dunkin' Manuals provide detailed and specific guidance and standards regarding health, sanitation, and safety.

**Defendants' Use of Baskin-Robbins' Marks**

31.    Defendants KNZ 161 Broadway Donut, LLC and KNZ 149 Broadway Donut, LLC are licensed to use the Baskin-Robbins trade names and trademarks in accordance with the terms of the Franchise Agreements.

32.    Baskin-Robbins provides each of its franchisees manuals, guides, and plans (collectively referred to hereinafter as the "Baskin Manuals") which set forth in detail the procedures, methodology, and standards applicable to the operation of a Baskin-Robbins store. These documents include:

a.    The Store Operations and Management Guide, which includes detailed sections on Dress Standards (Chapter 205.1), Cleanliness and Store Appearance (Chapters 300.1-303.1), Ice Cream Product Handling (Chapter 604.1), Yogurt Product Handling (Chapter 609.1), Product Preparation (Chapters 700.1-704.1), Sanitation and Maintenance (Chapters 1100.1-1108.1), and Safety (Chapter 1207.1);

b.    The Rules of Operation of a Baskin-Robbins Store; and

c.    The Retail Food Safety System Manual.

33.    Taken together, the Baskin Manuals provide detailed and specific guidance and standards regarding health, sanitation, and safety.

**The Franchise Agreements**

34.    The Franchise Agreements executed by Defendants contains acknowledgments and agreements by Defendants concerning the importance of maintaining Plaintiffs' standards

8

for health, sanitation, and safety.  For example, the applicable paragraphs of the Franchise

Agreements include:

       a.     Sections 5.0 and 5.1:  FRANCHISEE understands and acknowledges the importance to FRANCHISOR, FRANCHISEE and other franchisees, of FRANCHISEE's commitment to at all times operate the Unit in accordance with FRANCHISOR's Standards (as defined in Definitions paragraph "I"), in order to increase the demand for FRANCHISOR's products, to protect and enhance the reputation and goodwill of FRANCHISOR, to promote and protect the value of the Proprietary Marks and other reasons.  FRANCHISEE agrees to devote continuous best efforts to successfully develop, manage and operate the Unit and to enhance the goodwill of the Proprietary Marks authorized by this Agreement and the System(s) as a whole. . . .  FRANCHISEE further agrees as follows:

       b.     Section 5.1.1:  FRANCHISEE shall use all products, materials, ingredients, supplies, paper goods, uniforms, fixtures, furnishings, signs, equipment, methods of exterior and interior design and construction and methods of product storage, handling, preparation, packaging, delivery and sale prescribed by FRANCHISOR.  All such items must conform to FRANCHISOR's Standards. FRANCHISOR reserves the right to specify any item by brand.  FRANCHISEE shall carry out the business covered by this Agreement in accordance with the operational Standards established by FRANCHISOR and set forth in FRANCHISOR's operating manuals and other documents as they presently exist or shall exist in the future or as may be otherwise disclosed to franchisees from time to time.

       c.     Section 5.1.6:  FRANCHISEE shall maintain, at all times and at FRANCHISEE's expense, the interior and exterior of the Unit and all fixtures, furnishings, signs and equipment in the highest degree of cleanliness, orderliness, sanitation and repair, as reasonably required by FRANCHISOR.

       35.     The Franchise Agreements also contains acknowledgments and agreements

concerning the use of Plaintiffs' proprietary marks.  The relevant sections include:

       a.     Sections DD-7 7.0 and 7.1:  FRANCHISEE acknowledges and agrees that **DUNKIN' DONUTS®** is a registered trademark owned or controlled by DUNKIN' DONUTS; that said mark has been and is being used by DUNKIN' DONUTS and by its franchisees and licensees; that said mark, together with the other Proprietary Marks presently owned or controlled by DUNKIN' DONUTS or which may be acquired in the future, constitutes part of the Dunkin' Donuts System; that valuable goodwill is associated with and attached to said mark and the other Dunkin' Donuts Proprietary Marks. . . . FRANCHISEE agrees to use the

9

Proprietary Marks only in the manner and to the extent specifically licensed by this Agreement.

(Section BR-7 7.0.1 is substantially identical to Section DD-7 7.0)

       b.    Sections 8.0 and 8.0.1:  [N]either FRANCHISEE, nor any partner, officer, director, shareholder or member of FRANCHISEE, as the case may be, shall . . . do or perform, directly or indirectly, any . . . act injurious or prejudicial to the goodwill associated with FRANCHISOR's Proprietary Marks and System(s).

36.    The Franchise Agreements (at Section 9.3) provide that Defendants shall pay to Plaintiffs all damages, costs and expenses, including attorneys' fees, incurred by Plaintiffs as a result of any breach of the Franchise Agreements by Defendants and Defendants' failure to cure said default following notice.

37.    Maintenance of the highest standards of health, sanitation, and safety is essential to the development and maintenance of the reputation and goodwill of Plaintiffs.

## Shops Inspection

38.    On March 26, 2007, the Lexington Avenue Shop was inspected by a Dunkin' representative.  The Lexington Avenue Shop was identified as containing numerous standards violations relating to health, sanitation, and safety that were damaging to Dunkin's reputation and goodwill.

39.    On March 26, 2007, Dunkin' hand-delivered to the Lexington Avenue Shop a Notice to Cure listing the standards violations at the Lexington Avenue Shop and requesting that the violations be cured immediately.

40.    On April 2, 2007, Plaintiffs' representative reinspected the Lexington Avenue Shop.  Numerous standards violations remained uncured.

41.    On March 26, 2007, the 3851 Broadway Shop was also inspected by Plaintiffs'

representative. The 3851 Broadway Shop was identified as containing numerous standards violations relating to health, sanitation, and safety that were damaging to Plaintiffs' reputation and goodwill.

42. On March 26, 2007, Plaintiffs hand-delivered to the 3851 Broadway Shop a Notice to Cure listing the standards violations at the 3851 Broadway Shop and requesting that the violations be cured immediately.

43. On April 5, 2007, Plaintiffs' representative reinspected the 3851 Broadway Shop. Numerous standards violations remained uncured.

44. On March 26, 2007, the 3600 Broadway Shop was also inspected by Plaintiffs' representative. The 3600 Broadway Shop was identified as containing numerous standards violations relating to health, sanitation, and safety that were damaging to Plaintiffs' reputation and goodwill.

45. On March 26, 2007, Plaintiffs hand-delivered to the 3600 Broadway Shop a Notice to Cure listing the standards violations at the 3600 Broadway Shop and requesting that the violations be cured immediately.

46. On April 5, 2007, Plaintiffs' representative reinspected the 3600 Broadway Shop. Numerous standards violations remained uncured.

47. Despite the fact that Plaintiffs have brought standards violations to the attention of Defendants, Defendants have failed to cure these violations and bring their shops into conformity with the required standards.

48. Defendants' actions have caused and continue to cause irreparable harm to Plaintiffs, including harm to Plaintiffs' reputation and goodwill. Granting the requested injunctive relief would not harm any third parties and would advance the public interest.

## COUNT I

### (Breach of Contract)

49.    The allegations of paragraphs 1 through 48 are hereby incorporated by reference.

50.    The failure of Defendants to maintain Defendants' shops and to conduct business in a manner which conforms to the standards established by Plaintiffs' in the Franchise Agreements and the Dunkin' Donuts and Baskin-Robbins Manuals constitutes a breach of the contractual obligations and agreements undertaken by Defendants in the Franchise Agreements.

51.    These breaches of the Franchise Agreements constitute irreparable injury to the reputation and goodwill associated with the trademarks, trade name, and trade dress of Dunkin' Donuts and Baskin-Robbins and their other franchisees.

52.    As a direct and proximate result of these breaches, Plaintiffs have incurred substantial losses, fees, and expenses.

## COUNT II

### (Trademark Infringement)

53.    The allegations of paragraphs 1 through 52 are hereby incorporated by reference.

54.    Defendants' use in commerce of the Dunkin' Donuts and Baskin-Robbins trademarks and trade name outside the scope of their Franchise Agreements and without Plaintiffs' consent is likely to confuse or deceive the public into believing, contrary to fact, that the unauthorized activities of Defendants are licensed, franchised, sponsored, authorized, or otherwise approved by Plaintiffs.  Such continued use of the Plaintiffs' trademarks and trade name infringes Plaintiffs' exclusive rights in the Dunkin' Donuts and Baskin-Robbins trademarks under § 32 of the Lanham Act, 15 U.S.C. § 1114, and applicable state law.

55.    As a result of Defendants' actions, Plaintiffs have suffered and are continuing to

suffer irreparable injury, and have incurred and are continuing to incur monetary damage in an amount yet to be determined.

## COUNT III

### (Unfair Competition)

56.    The allegations of paragraphs 1 through 55 are hereby incorporated by reference.

57.    Defendants' use in commerce of the Dunkin' Donuts and Baskin-Robbins trademarks and trade name outside the scope of their Franchise Agreements and without the consent of Plaintiffs is likely to cause confusion, or to cause mistake, or to deceive as to the origin, sponsorship, or approval of their goods, services or commercial activities by another person. Such unauthorized use of the Dunkin' Donuts and Baskin-Robbins trademark and trade name violates § 43 of the Lanham Act, 15 U.S.C. § 1125(a), and applicable state law.

58.    As a result of Defendants' actions, Plaintiffs have suffered and are continuing to suffer irreparable injury, and have incurred and are continuing to incur monetary damage in an amount yet to be determined.

## COUNT IV

### (Trademark Dilution)

59.    The allegations of paragraphs 1 through 58 are hereby incorporated by reference.

60.    Defendants' commercial use in commerce of the Dunkin' Donuts' and Baskin-Robbins' trademarks and trade name outside the scope of their Franchise Agreements and without the consent of Plaintiffs causes dilution of the distinctive quality of Plaintiffs' trademarks and trade name. Such unauthorized use of the Dunkin' Donuts and Baskin-Robbins trademark and trade name violates § 43 of the Lanham Act, 15 U.S.C. § 1125(c), and applicable state law.

13

61.    As a result of Defendants' actions, Plaintiffs have suffered and are continuing to suffer irreparable injury, and have incurred and are continuing to incur monetary damage in an amount yet to be determined.

### Prayer for Relief

WHEREFORE, Plaintiffs pray that this Court:

a.    Enjoin Defendants to cease violating at their shops Plaintiffs' standards for health, sanitation, and safety as identified on the Food Safety and Sanitation Inspection forms respectively dated April 2, 2007 and April 5, 2007 within five (5) days of the date of the Court's Order;

b.    Enjoin Defendants and all those acting in concert with them from infringing upon Plaintiffs' trademarks and trade name, from diluting Plaintiffs' trademarks and trade name, and from otherwise engaging in unfair competition with Plaintiffs;

c.    Award Plaintiffs judgment against Defendants for any damages Plaintiffs have incurred as a result of Defendants' actions, including its costs and attorneys' fees incurred in connection with this action; and

d.    Award Plaintiffs such other relief as this Court may deem just and proper.

Respectfully submitted,


/s/ Ronald D. Degen
Ronald D. Degen, Esq.  (RD 7808)
Scott Goldfinger, Esq.  (SG 9219)
O'ROURKE & DEGEN, PLLC
225 Broadway, Suite 715
New York, New York 10007
Telephone:     (212) 227-4530
Facsimile:     (212) 385-9813
E-mail:        rdegen@odlegal.com

14

Robert L. Zisk (RZ 1275)
David E. Worthen (DW 8519)
GRAY, PLANT, MOOTY, MOOTY
& BENNETT, P.A.
2600 Virginia Avenue, N.W.
Suite 1111
Washington, DC 20037
Telephone:    (202) 295-2200
Facsimile:    (202) 295-2250

Collin B. Foulds (CF
GRAY, PLANT, MOOTY, MOOTY
& BENNETT, P.A.
500 IDS Center
80 South Eighth Street
Minneapolis, Minnesota 55402
Telephone:    (612) 632-3388
Facsimile:    (612) 632-4388

*Attorneys for Plaintiffs*
Dunkin' Donuts Franchised Restaurants LLC,
DD IP Holder LLC,
Baskin-Robbins Franchised Shops LLC, and
BR IP Holder LLC.

Dated: May 7, 2007

15